COMMONWEALTH *vs.* MYLES F. HEFFERNAN.

Middlesex.    October 4, 1965. — January 4, 1966.

Present: SPALDING, WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Evidence,* Cross-examination, Judicial discretion, Redirect examination, Recent invention. *Practice, Criminal,* Argument by prosecutor, New trial, Suppression of evidence.

No abuse of discretion appeared at the trial of an indictment in the exclusion of a question to a witness for the Commonwealth on cross-examination as to collateral facts reflecting on his credibility.   [50]

At the trial of an indictment for receiving a bribe in which the defendant on cross-examination of the bribe giver raised the implication that his story of the bribe was a recent invention, there was no error on redirect examination in permitting the witness to testify that he had told a named individual about the bribe soon after it allegedly had been given and received.   [51–52]

At the trial of an indictment for receiving a bribe, where testimony by the bribe giver that he had told a named individual about the bribe soon after it allegedly had been given to the defendant was rightly admitted to refute an implication of recent invention, it was not improper for the prosecutor to use the bribe giver's statement in argument, analogizing it to a "fresh complaint."   [52]

There was no abuse of discretion in the denial of a motion for a new trial of an indictment for receiving a bribe based on affidavits of statements by a witness for the Commonwealth prior to the trial contradictory to his testimony at the trial, and on affidavits concerning statements made by another witness for the Commonwealth, the bribe giver, following the conviction of the defendant, indicating that witness's pleasure at the result.  [52–54]

There was no abuse of discretion in the denial, without taking oral evidence, of a motion for a new trial of an indictment based on affidavits allegedly substantiating the existence of a conspiracy between two witnesses for the Commonwealth to perjure themselves and harm the defendant.  [54]

There was no error in the denial of a motion for a new trial of an indictment against a State police trooper on the ground that the prosecution suppressed evidence or used perjured testimony in that a State police major during the trial sat through significant testimony by a witness for the Commonwealth which differed from the story the witness had previously told the major and the contradiction was not brought to the court's attention, where it appeared, among other matters, that the defendant had full knowledge of the facts as to such testimony and did not raise the point at the trial.  [54–55]

INDICTMENT found and returned on December 9, 1964.

The case was heard in the Superior Court without jury by *Bolster, J.*

*F. Lee Bailey* (*Robert A. Barton* with him) for the defendant.

*Donald L. Conn,* Assistant District Attorney (*Ruth I. Abrams,* Assistant District Attorney, with him), for the Commonwealth.

REARDON, J.    This is an appeal under G. L. c. 278, §§ 33A–33G, as amended, from the conviction of the defendant by a judge sitting without jury in the Superior Court.    The defendant had been indicted under G. L. c. 268A, § 2 (d), in that he, being a State trooper, "did corruptly ask for and receive something of value for himself in return for being influenced in the performance of an official act."

It is undisputed that on the morning of November 1, 1964, while driving easterly on Route 2 in Concord, Travis K. Stone and Thomas M. Price, both army privates at Fort Devens, were stopped by the defendant and that Stone was the operator of the car.    Although it had one registration plate attached, the car was in fact unregistered and uninsured.    Stone was found by the defendant to be operating

without an inspection sticker. Conversation ensued between Stone and the defendant, during which Price left and returned to Fort Devens by hitchhiking. There was conflicting testimony as to whether the police cruiser containing the defendant and Stone drove off prior to the departure of Price. It was testified by Stone and denied by the defendant that sometime later, in the cruiser, the defendant said to Stone, "If you would give me enough money to buy two fifths of Canadian Club Whiskey, I will let you go," and that Stone gave Heffernan $9 in response to this request. It is undisputed that Heffernan, at 8:30 A.M., made a radio transmission calling for a wrecker to tow the car which he termed "abandoned."

We turn to a consideration of the exceptions taken during trial and those relating to the denial of the defendant's amended motion for a new trial, including the denial of certain "requests for rulings of law." The defendant has assigned as error twelve matters.

1. The defendant complains of the judge's exclusion of a question which had reference to an appearance by Stone in the Concord District Court sometime prior to trial. The question was, "Did you refuse to testify [in that appearance] on the grounds that you might incriminate yourself?" The intention of defence counsel was to offer the evidence of a claim of the privilege against self-incrimination for the purpose of impeaching Stone's previous testimony that he had had a civic motive in informing certain police officials regarding the alleged bribe. There is no need to pass upon the defendant's contention based on the witness's privilege against self-incrimination. We hold the judge's ruling to be proper on the basis of his broad discretion to make rulings on the scope of cross-examination on collateral facts which reflect on credibility. *Commonwealth* v. *Sacket*, 22 Pick. 394, 396. *Commonwealth* v. *Patalano*, 254 Mass. 69, 72. *Commonwealth* v. *Makarewicz*, 333 Mass. 575, 593. *Commonwealth* v. *Palladino*, 346 Mass. 720, 723. Further, shortly after taking the exception, the defence counsel elicited testimony from Stone tending to show that he had claimed the privilege. *Commonwealth* v. *Corcoran*,

252 Mass. 465, 486. *Commonwealth* v. *Beal,* 314 Mass. 210, 229. *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 593. *Commonwealth* v. *Palladino,* 346 Mass. 720, 723.

2. During cross-examination of Stone he admitted that he had talked with a number of officers of the law about the case. He said that right after the alleged bribe he had "conversation" with a person who gave him a ride to his car and with the service station attendant where he left his car. Concerning these two, who were not officers, his answers did not imply that he had discussed the bribe with them. Defence counsel examined Stone's motive for not reporting the alleged bribe until he was arrested on a charge not related to this case, counsel's theory being that the bribe was an invention to discourage the Ayer police from prosecution of Stone on the charge against him. On redirect examination the Commonwealth attempted to dispel the implication that the story was an invention springing from the arrest. After the prosecution asked whether Stone had conferred with anyone about the alleged bribe on arriving at his barracks on the first of November, 1964, defence counsel objected. The judge permitted the answer, "Yes." The next question was, "And with whom did you confer?" Again defence counsel objected but the judge allowed the question. The defendant responded, "PFC Price and —." Defence counsel then interrupted with his exception, "Would you save my rights on this, your Honor?" The witness continued, "PFC Price and — well, almost everyone in the barracks heard about it sooner or later." Counsel said, "I object to that and move it be stricken." The judge replied, "That last may be stricken out."

The Commonwealth urged that defence counsel's two objections and his single tardy exception were not taken in a manner which would permit his challenging the questions or answers in this court. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 384. *Commonwealth* v. *Gray,* 314 Mass. 96, 102. G. L. c. 278, § 33B. Rule 72 of the Superior Court (1954). See *Commonwealth* v. *McGarty,* 323 Mass. 435, 439; *State* v. *Laundy,* 103 Ore. 443, 505–506.

Putting to one side the tardiness of the exception, we note that the question and answer were both proper. "It is the general rule that a witness cannot be corroborated by showing that he has previously made statements similar to those given by him at the trial. . . . But there is an exception where it is claimed that the testimony is a recent invention or fabrication . . .." *Walsh* v. *Wyman Lunch Co.* 244 Mass. 407, 409.

During the closing argument the prosecution adverted to the conversation between Stone and Price in the barracks concerning the alleged bribe. It was permissible, in the light of what we have already stated concerning this evidence, for the judge in making his findings to give such weight as he deemed warranted to the occurrence of this barracks conversation. *Damon* v. *Carrol,* 163 Mass. 404, 409. *Hubbard* v. *Allyn,* 200 Mass. 166, 171. *O'Kane* v. *Travelers Ins. Co.* 337 Mass. 182, 184. The prosecution's use of the statement in argument, analogizing it to "fresh complaint," was not improper argument since it was not "unfair, prejudicial and unwarranted." *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 28. See *Commonwealth* v. *Cabot,* 241 Mass. 131, 147–148.

3. We turn now to the problem of the denial of the defendant's amended motion for a new trial. The disposition of the motion as originally made hinged upon the affidavits of army personnel and of the defendant's own investigator. These affidavits were offered to prove that Price had stated on two occasions prior to the trial that he had never seen the police cruiser move. Price said at the trial that he had seen the cruiser move.

The defence argued that if Price's testimony were not credible (a) the conviction would be against the weight of the evidence, (b) there would be insufficient evidence to support the conviction, and (c) the action of a State police major, one Murgia, in failing to reveal the potentially impeaching fact of Price's deviation from his previous story was such a withholding of evidence that the conviction was as a matter of law vitiated under the Fourteenth Amendment of the Constitution of the United States, even though

there might be sufficient other evidence to support the conviction.

Subsequent to the motion and requests for rulings of law, the defendant filed the amendment to his motion, later incorporated into the motion by the trial judge. The affidavits supporting the amendment to the motion for a new trial were from six service men who gave testimony therein concerning obscene statements made by Stone following the conviction of the defendant and tending to indicate his pleasure at the result. It was argued that these affidavits were new evidence which, combined with the earlier ones, indicated that Stone harbored a malice toward the defendant which was his prime motive in reporting the bribe — that his motive was not inspired by a citizen's duty. The defendant also urged that the affidavits substantiated the existence of a conspiracy between Stone and Price to perjure themselves and harm the defendant.

We consider both sets of affidavits in the light of the well known rules concerning new evidence. *Davis* v. *Boston Elev. Ry.* 235 Mass. 482, 495–496. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 24–25. *Commonwealth* v. *Devereaux,* 257 Mass. 391. *Commonwealth* v. *Sacco,* 259 Mass. 128, 136. The weight and import of the affidavits submitted in support of the defendant's motion were for the trial judge's discretion. *Commonwealth* v. *Crapo,* 212 Mass. 209, 210. *Sherman* v. *Collingwood,* 221 Mass. 9, 12–13. *Berggren* v. *Mutual Life Ins. Co.* 231 Mass. 173, 177–178.

The record sufficiently indicates the difficulty of the case which the trial judge had to decide but "it is not for us to determine what is to be believed. The question for us is: Could the judge conscientiously, intelligently and honestly have reached the result he has reached?" *Commonwealth* v. *Sacco,* 259 Mass. 128, 140, citing *Davis* v. *Boston Elev. Ry.* 235 Mass. 482, 502. While there were many witnesses who testified in the two days of trial, the defendant's guilt or innocence depended upon the value which the trial judge placed upon the testimony of the defendant as against that of the witness Stone, the only persons in a position to give direct testimony on the subject matter of the indictment.

The trial judge saw both of these men. He heard their stories. He was in the best position to ascertain the facts. A careful review of the evidence reveals no abuse of discretion in his refusing the new trial on the grounds that his finding was against the weight of the evidence, or that the evidence was insufficient to sustain the conviction.

It may further be stated that the judge is in his discretion entitled to choose the procedure by which he will consider a motion for a new trial. See *Opinion of the Justices,* 207 Mass. 606, 609; *Commonwealth* v. *Millen,* 290 Mass. 406, 410; *Graustein, petitioner,* 305 Mass. 571, 572; *Commonwealth* v. *Coggins,* 324 Mass. 552, 556–557; *Commonwealth* v. *Shand,* 335 Mass. 764. We are unable to say that the trial judge abused his discretion in not taking oral evidence on the questions of conspiracy to perjure even assuming that the witness Stone made the statements attributed to him. These could have been interpreted as expressions of Stone's great satisfaction in having helped convict the defendant as much as expressions showing that Stone had harbored a prior intent to convict him by any means.

4. The final question has to do with whether there was conduct by the prosecution which so vitiated the conviction as to require a new trial. The defendant contends that a State police major sat through significant testimony by Price which diverged from the story Price had previously told to him.

In his brief the defendant has cited cases concerning suppression of evidence by the prosecution. The leading case is *Mooney* v. *Holohan,* 294 U. S. 103, 110–113, wherein the Supreme Court of the United States said that the prosecuting attorney's knowing use of "perjured testimony to obtain the conviction and the deliberate suppression of evidence to impeach that testimony" would constitute a denial of due process of law. *Pyle* v. *Kansas,* 317 U. S. 213. *Alcorta* v. *Texas,* 355 U. S. 28. *Napue* v. *Illinois,* 360 U. S. 264. See *Brady* v. *Maryland,* 373 U. S. 83, 87–88; *Barbee* v. *Warden, Maryland Penitentiary,* 331 F. 2d 842 (4th Cir.).

We are not persuaded that we need consider the questions raised by *Mooney* v. *Holohan, supra.* Here the prose-

cutor had no knowledge of there being anything amounting to perjury or evidence suppression. Further, in the decisions cited above the perjury or suppression involved matters which could be held to have been material to the result reached below. Here we have the benefit of the trial judge's statement that Price's testimony played no part in the finding.

Moreover, there is a further consideration noted in *Green* v. *United States,* 158 F. Supp. 804, 809 (D. Mass.), affd. 256 F. 2d 483 (1st Cir.), in which it was said by Wyzanski, J., "where at his trial a defendant has knowledge that the prosecutor is knowingly using perjured testimony, and the defendant does not then raise the point, ordinarily he cannot have an adverse judgment set aside on the basis of that prior knowledge." *Price* v. *Johnston,* 334 U. S. 266, 277–278, 291. See *Taylor* v. *United States,* 229 F. 2d 826, 833–834 (8th Cir.); *McDonald* v. *United States,* 282 F. 2d 737, 741 (9th Cir.).

The defendant has argued that Major Murgia was silent at the trial when he heard Price tell a story different in one respect from what Price had previously said to him. However, it does not appear that Murgia or any other member of the prosecution solicited any perjury or suppressed any facts. Rather, it appears that the facts which the defendant claims were suppressed were fully known to his own investigator. If the defendant was harmed it was because of a failure of communication between his investigator and his counsel. Such a failure of communication can in no way be laid to the activities or lack of them on the part of the State's officers. The defendant's full knowledge of the facts is for us the definitive answer to the defendant's claim of suppression of evidence and related use of perjured testimony.

The judge below thus did not err in refusing the defendant's motion for a new trial on the grounds of the prosecution's having suppressed evidence.

Following consideration of all the defendant's assignments of error we are satisfied that there was no error below.

*Judgment affirmed.*