COMMONWEALTH *vs.* JAMES G. DOHERTY.

Middlesex.    October 4, 1976. — December 6, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Evidence,* On redirect examination, On cross-examination.  *Practice, Criminal,* Mistrial, Charge to jury.  *Witness,* Accomplice.

Where defense counsel at a murder trial raised a question during cross-examination of a police officer as to why a photograph of the defendant's hand was not taken immediately upon his arrest but some time later, there was no error in allowing the witness to testify as to the defense counsel's objections to the taking of the photograph as leading to the delay. [415-416]

At a murder trial of a defendant and codefendant, where a prosecution witness testified regarding threats against him by the codefendant that the codefendant told him, "I hold [the defendant] responsible for you because he vouched for you," and the testimony was struck with cautionary instructions to the jury, the evidence was not such a powerfully incriminating extrajudicial statement as to constitute error under *Bruton* v. *United States,* 391 U.S. 123 (1968). [416]

At a murder trial, there was no error in allowing the prosecutor to elicit testimony from the defendant's wife that she had purchased a handgun a few days before the probable cause hearing as evidence of the defendant's intention to escape; nor was a mistrial required by an unanswered question to the defendant as to "hacksaw blades" where the judge promptly excluded the evidence on his own motion and instructed the jury to disregard the question. [416-417]

At a trial for murder and armed assault in a dwelling house with intent to rob, there was no error in excluding testimony that a prosecution witness, an unindicted accomplice in the murder, had told the defendant's half brother that some months after the crimes on trial he had killed another accomplice. [417-418]

At a murder trial, where the chief prosecution witness was an unindicted accomplice in the murder, a portion of the judge's charge that the jury might consider whether there had been corroboration of the accomplice's testimony was adequate in the circumstances. [418-419]

At a murder trial, where the chief prosecution witness was an unin-
dicted accomplice in the murder who was incarcerated under an un-
related Federal sentence, an erroneous instruction by the judge that
"there isn't a police official or a district attorney or a Superior Court
judge of the State of Massachusetts who could do anything about
granting or restricting any furlough which [the accomplice] might
have" was harmless beyond a reasonable doubt. [419]

INDICTMENTS found and returned in the Superior Court
on December 11, 1973.

The cases were tried before *Roy*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Frank P. Marchetti* for the defendant.

*Peter W. Agnes, Jr.*, Assistant District Attorney (*Fran-
cis K. Monarski*, Assistant District Attorney, with him)
for the Commonwealth.

BRAUCHER, J.    The defendant was indicted for murder
and for armed assault in a dwelling house with intent to
rob. After trial with a codefendant, James G. Stewart, he
was convicted of murder in the second degree and of the
assault charged, and was sentenced to two consecutive
terms of life imprisonment. He appealed under G. L. c. 278,
§§ 33A-33G, assigning error with respect to the admission
and exclusion of evidence and instructions to the jury. We
transferred the case here on our own motion, and we affirm
the convictions.

There is no dispute that the victim and his wife were
beaten and that the victim was shot and killed by intruders
in their home in Newton about 4 A.M. on June 19, 1972.
Lawrence Goldman, the chief Commonwealth witness,
testified that he went to the victim's home to break in
and commit a robbery with three other men: Anzalone,
who died before the trial, the defendant and the codefend-
ant. Goldman began serving a Federal sentence in May,
1973, for breaking and entering a post office. Subsequently,
as a result of his disclosures, the defendant was arrested
on November 20, 1973. Indictments were returned in De-
cember, 1973, and the trial was held in November, 1974.

Goldman was an unindicted and unimmunized accomplice in the murder. There was no other evidence placing the defendant at the scene, but numerous details of Goldman's testimony were corroborated by independent evidence. Thus police officers supported Goldman's testimony that, about 11:15 P.M. on June 18, 1972, the defendant was stopped less than two miles from the victim's home, and given a warning slip for failing to stop for a red light. Again, Goldman testified that the defendant shot his own little finger when he shot the victim, and that Goldman treated the wound later at Goldman's home; this testimony was supported by testimony of Goldman's wife.

The defendant filed twenty-one assignments of error, but argued only five of them. He also argued two additional issues, and moved for leave to file supporting additional assignments of error. We discuss the issues in the order in which he argued them.

1. *Photographs of the defendant's hand.* The arresting officer testified that after he arrested the defendant, on November 20, 1973, he noticed a scar on the little finger of the defendant's right hand. He also identified photographs of the hand taken that morning after the defendant was arraigned. On cross-examination counsel for the defendant inquired whether the taking of the pictures was discussed after the arrest and whether objections were raised. On redirect examination the officer was permitted to testify over objection that the defense attorney "strongly objected, so we finally agreed we would let the Court decide."

The defendant now contends that this evidence purported to be a vicarious admission of guilt, in violation of the hearsay rule. Cf. *Commonwealth* v. *White*, 370 Mass. 703, 709 (1976). He also contends that there was an improper comment on the defendant's exercise of his right to remain silent. Cf. *Commonwealth* v. *Mitchell*, 367 Mass. 419, 421 (1975). These arguments are entirely misdirected. The evidence in question was never used as an admission, vicarious or otherwise. It merely explained why the pictures were not taken immediately after arrest. Having raised the question of delay on cross-examination, the de-

fendant cannot complain that the delay is explained on redirect examination. Cf. *Commonwealth* v. *Caine,* 366 Mass. 366, 368-369 (1974).

2. *Threat by the codefendant.* Goldman testified that he had had a conversation with the codefendant Stewart about the possibility that Goldman might be a Commonwealth witness. At the request of the defendant, the judge ruled that the conversation would be evidence only against the codefendant and not against the defendant. Goldman then testified that Stewart had threatened to kill Goldman if Goldman testified against him. Among other things, the codefendant had said, " 'I hold Jimmy Doherty responsible for you because he vouched for you.' " This testimony was immediately followed by a bench conference and by a voir dire hearing requested on behalf of the codefendant, and it appeared that the conversation between Goldman and the codefendant had involved a completely separate crime, referred to as "a Danvers armored-car robbery," and had occurred before Goldman had become a police informant with respect to the murder in Newton. The judge granted the codefendant's motion to strike the testimony, and instructed the jury to put the alleged threat out of their minds. The defendant then moved for a mistrial, and the motion was denied. He claims error under the rule in *Bruton* v. *United States,* 391 U.S. 123 (1968). We think, however, that the excluded evidence was not such a "powerfully incriminating extrajudicial statement" as to bring the Bruton rule into play. *Id.* at 135. *Commonwealth* v. *Devlin,* 365 Mass. 149, 159-160 (1974). Cf. *Commonwealth* v. *Corradino,* 368 Mass. 411, 419 (1975). Since the evidence was excluded as to both defendants, the jury were not called on to consider it as to one but not the other.

3. *Evidence as to escape.* Two assignments of error relate to evidence suggesting that the defendant intended to escape. He claims that the prosecutor improperly sought to attribute to him the acts of others, unknown to him and out of his presence. First, after the defendant's wife had given alibi testimony, the prosecutor elicited testimony on cross-examination, over the defendant's objection and ex-

ception, that she had purchased a handgun a few days before the probable cause hearing.

Second, the defendant testified on direct examination that he never got into trouble after he was released from jail in 1964, except for automobile violations. He also testified that he was transferred in June, 1974, from the Billerica house of correction to the correctional institution at Walpole "for security." On cross-examination, he testified that the transfer was about a month after a visit to Billerica by his half brother. The prosecutor then asked, "Did you ever see the hacksaw blades — ." The judge promptly excluded the evidence on his own motion, denied the defendant's motion for mistrial, and instructed the jury that an unanswered question is not evidence at all.

Neither of these two incidents produced evidence of significant relevance to the issues on trial, or indeed to the credibility of the witnesses. It seems unlikely that they had any adverse effects on the defendant. In any event, we think there was no error. The applicable principle is that the scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested, rests largely in the sound discretion of the judge. *Commonwealth* v. *Hall,* 369 Mass. 715, 731 (1976), and cases cited. We do not assume that jurors will ignore strong instructions to disregard certain matters. *Commonwealth* v. *Walker,* 370 Mass. 548, 570 (1976), and cases cited.

4. *Murder by the accomplice witness.* The judge excluded all cross-examination of Goldman as to whether Goldman had killed Anzalone. The judge said, "He hasn't been indicted or convicted of it." Later the defendant sought to introduce his half brother's testimony that Goldman had said he murdered Anzalone. The judge listened to the testimony on voir dire, including the statements, "I wasn't too sure if he was telling the truth or just joking," and "I thought he was a liar, you know, couldn't really believe what he said." The judge excluded the evidence.

The defendant did not raise this issue by assignments of error, but now seeks leave to file additional assignments of error covering it. He argues that the evidence should

have been admitted "to show the possible motive of Goldman in testifying against the defendant." Cf. *Commonwealth* v. *Graziano*, 368 Mass. 325, 330 (1975). We think the judge properly treated the evidence as relating to a collateral issue, and he could properly exclude it as creating dangers of confusion and prejudice outweighing its value as legitimate proof. See *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 816 (1973). Cf. *Commonwealth* v. *A Juvenile*, 361 Mass. 214, 218 (1972).

Anzalone's death occurred some seven months after the crimes on trial. Goldman had testified to his direct involvement in these crimes. He was fully cross-examined as to the details of his participation, and he was impeached by cross-examination as to convictions and indictments for other crimes. The alleged reasons for the murder of Anzalone were not related to the Newton murder. We think the evidence offered as to Anzalone's death could have shed very little light, if any, on Goldman's motive in testifying. The danger in opening up a subsidiary trial of a second murder was obvious.

5. *Instruction on corroboration of accomplice testimony.* The judge said that the defendant could ask for a charge that particular scrutiny should be given to the evidence of an accomplice. See *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 729 (1973). But then, the judge said, he might have to give a similar charge as to alibi witnesses, in accordance with *Commonwealth* v. *Webster*, 5 Cush. 295, 319, 324 (1850). We have since disapproved the Webster alibi charge. *Commonwealth* v. *McLeod*, 367 Mass. 500, 502 (1975). See *Commonwealth* v. *Leaster*, 362 Mass. 407, 416 (1972). The judge said he would charge that the testimony of all witnesses should be scrutinized with care, and counsel for the defendant acquiesced.

The judge charged the jury as he said he would. He also told the jury, "Now, you may also consider whether or not, in respect of the case against Doherty, whether or not there has been any corroboration by other witnesses or by physical evidence of Goldman's testimony." The defendant did not object, except, or assign error on this point, but

he now argues that the judge failed to take account of the ease with which an accomplice, speaking truly as to other facts, can put the defendant in the accomplice's place. See *Commonwealth* v. *Holmes*, 127 Mass. 424, 432-433 (1879).

The defendant makes no such showing of "grave prejudice" as would justify us in considering a point not made to the trial judge. *Commonwealth* v. *Burnett, ante,* 13, 16 (1976). But we prefer to rest our decision on the view that the charge as given was entirely proper.

6. *Instruction as to furloughs.* The judge instructed the jury that "there isn't a police official or a district attorney or a Superior Court judge of the State of Massachusetts who could do anything about granting or restricting any furlough which Goldman might have." The defendant argues that this instruction was inaccurate, citing St. 1965, c. 892, § 1, arts. 4, 5. We agree. But it must have been obvious to the jury that State officials had been able to secure the presence of Goldman as a witness, and hence that cooperation between State and Federal officials was a possibility. The judge had just explained that Goldman was not a "choir boy" and that it would be "naive" to assume that he did not "hope to help himself in the giving· of this testimony." Any error as to furlough possibilities was harmless beyond a reasonable doubt.

7. *Section 33E.* In accordance with our duty under G. L. c. 278, § 33E, we have reviewed the transcript and we find no reason to change the ultimate outcome.

*Judgments affirmed.*