## Commonwealth *vs.* Kareem Wooden.

No. 06-P-1661.

Middlesex. May 7, 2007. - September 20, 2007.

Present: Trainor, Dreben, & Katzmann, JJ.

*Constitutional Law,* Confrontation of witnesses, Self-incrimination. *Witness,* Immunity. *Practice, Criminal,* Duplicative convictions.

In denying the criminal defendant's motion to subpoena the testimony of a witness, the Superior Court judge did not abuse her discretion in determining that the witness could invoke his right under the Fifth Amendment to the United States Constitution not to testify against himself, where if the witness were required to testify, he could be subjected to further criminal prosecution in relation to how he obtained a certain weapon and why he had it in his possession. [187-190]

This court declined to consider whether the judge hearing the criminal defendant's motion to subpoena the testimony of a witness should have granted immunity to that witness, where the defendant did not present the issue of immunity to the motion judge, and where, even if the defendant had requested immunity, the judge would not have abused her discretion if she had denied the request. [190-192]

At a criminal trial, convictions of armed robbery and armed assault with intent to rob were not duplicative, where the fact finder could have determined that the two charges arose from separate and distinct acts during one robbery. [192-193]

Indictments found and returned in the Superior Court Department on October 3, 2002.

A motion to subpoena a witness's testimony was heard by *Ralph D. Gants* and *Elizabeth Bowen Donovan,* JJ., and the cases were heard by *Peter M. Lauriat,* J.

*Jeanne M. Kempthorne* for the defendant.

*Steven W. Phillips,* Assistant District Attorney, for the Commonwealth.

Katzmann, J. A grand jury returned six indictments against the defendant, Kareem Wooden, charging him with armed robbery (Count I), armed assault with intent to rob (Count II), assault

and battery by means of a dangerous weapon (Count III), assault by means of a dangerous weapon (Count IV), possession of a sawed-off shotgun (Count V), and malicious destruction of property over $250 (Count VI). After a Superior Court bench trial, he was convicted on the first five indictments and on a lesser included offense on Count VI (malicious destruction of property under $250). The defendant now appeals. He contends that the motion judge's denial of his motion to subpoena a witness's testimony, based on the witness's privilege under the Fifth Amendment to the United States Constitution, was error, and asserts, for the first time, that the judge should have independently granted the witness immunity. He also claims that the convictions of armed robbery and armed assault with intent to rob are duplicative. We affirm.

*Background.* Viewing the evidence in the light most favorable to the Commonwealth, the judge, as fact finder, could have found the following. On the evening of June 14, 2002, James Rock and Jenna Dudley drove to Malden to see Rock's friend, Christopher Noble. Rock and Noble had spoken earlier in the afternoon and Noble had told Rock to park down the street from Noble's house. Upon arriving at Noble's residence, Rock ignored Noble's request and parked across the street from the house. After visiting Noble, Rock intended to make a car payment via Western Union at a local supermarket.

Upon Rock's arrival, Noble left his residence and approached the car. Noble was aware of Rock's intended destination and that he usually carried the car payment in cash. Noble suggested that Rock drive the car down the street and park. Rock did not move the car. While Noble was speaking with Rock and Dudley, a male assailant approached the vehicle, pulled a shotgun from his coat, and stated to Noble, "Chris, get down on the ground." The assailant then pointed the shotgun at Rock and demanded his jewelry and money. When Rock gave the assailant his neck chain and ten dollars, the assailant demanded more money and ordered Rock out of the vehicle. As Rock left the vehicle, the assailant hit Rock in the jaw with the butt end of the gun and told Rock to lie on the ground. The assailant then placed the shotgun to Rock's head and frisked him. The assailant again demanded Rock's money. Failing to obtain more money, the assailant approached the driver's side door and demanded

the keys to the vehicle. Rock refused to provide the keys and instead removed them from the car.

Frustrated again, the assailant cocked the shotgun and pointed it at Dudley, ordering her out of the car. The assailant threatened to shoot either Rock, Dudley, or Noble. He then used the butt of the shotgun to smash the rear windshield of Rock's vehicle. Dudley escaped from the vehicle and ran for help. Noble also ran away. The assailant proceeded to smash the front windshield, in the process breaking the stock end of the shotgun.

While these events were transpiring, Rock kept yelling at the assailant, "I know who you are. Get out of here, and I won't say anything." The assailant eventually left. When police arrived, Rock identified the assailant as the defendant. He subsequently identified the defendant in a photographic array. Dudley was unable to make an identification. Identification of the assailant was the primary issue at trial.

On July 5, 2002, Noble's parents granted police permission to search Noble's bedroom in relation to a separate offense. The search turned up a loaded shotgun with a missing stock end. The stock end recovered at the scene of the June robbery matched that shotgun.[1]

*Discussion.* 1. *Prospective witness's Fifth Amendment privilege and immunity.* Noble pleaded guilty to six charges arising from his involvement in the June 14, 2002, armed robbery as well as to charges relating to the possession of the shotgun discovered during the search in July, 2002. Prior to trial, the defendant sought a subpoena summoning Noble as a trial witness. A Superior Court judge allowed the motion without objection, with the notation that "[n]othing in this motion speaks to the issue of whether Mr. Noble shall invoke or lawfully may invoke his Fifth Amendment rights." A month later a hearing on Noble's assertion of his Fifth Amendment rights was held before another Superior Court judge. At this pretrial hearing, the defendant's trial counsel described the line of questioning he wished to pursue, repeatedly insisting that how Noble obtained the shotgun found in July, 2002, was crucial to the defendant's exculpation. With the focus squarely on this incident, the motion judge then

---

[1]The Commonwealth did not find the defendant's fingerprints or other identifying physical evidence on the shotgun.

allowed the Commonwealth as well as Noble's counsel, to establish a basis for Noble's assertion of a Fifth Amendment privilege in relation to the July search. After considering the arguments, the motion judge asked Noble if he intended to "take the Fifth Amendment if called to trial in this matter." Noble responded affirmatively. The motion judge then found that Noble had a "Fifth Amendment right to the events of July [, 2002,]" and therefore that "he will not be compelled to testify against himself." Defense counsel objected.

While the June robbery hung on the periphery of the arguments presented during the hearing, neither the parties nor the judge clearly addressed the issue whether Noble also had an independent and valid Fifth Amendment privilege in relation to the robbery or whether this was even an issue. To this extent, we note that defense counsel never clearly sought to inquire as to Noble's version of the June armed robbery. It is also of note that defense counsel, after learning that Noble had a valid Fifth Amendment privilege, did not seek immunity for Noble, either from the Commonwealth, pursuant to G. L. c. 233, §§ 20C-20E, or from the judge, to allow Noble's testimony about either the June robbery or July search. See generally Smith, Criminal Practice and Procedure §§ 810-821 (2d ed. 1983 & Supp. 2006).

Noble did not testify at trial. Furthermore, there is no indication in the record that, during the trial, defense counsel sought immunity for Noble. At trial and over objection, as has been noted, the Commonwealth introduced in evidence the shotgun with the missing stock end seized from Noble's house and the stock end recovered at the crime scene.

The defendant argues that it was error for the motion judge to deny the motion to subpoena Noble's testimony. He asserts that allowing Noble's testimony, which would arguably have both cast further doubt on the identification made by Rock[2] and the inference that the gun was used by the defendant in the robbery, was prejudicial to the defendant's case. In the alternative, the defendant argues that the motion judge erred by not granting Noble immunity.

"Both the Sixth Amendment [to the United States Constitu-

---

[2]In a statement to police made in the aftermath of the incident but before his arrest, Noble had told police that he did not know the defendant.

tion] and art. 12 [of the Massachusetts Declaration of Rights] guarantee a criminal defendant's right to confront the witnesses against him through cross-examination," *Commonwealth* v. *Farley*, 443 Mass. 740, 748 (2005), quoting from *Commonwealth* v. *Miles*, 420 Mass. 67, 71 (1995), and a defendant's right to present a defense by calling witnesses on his own behalf. *Commonwealth* v. *Freeman*, 442 Mass. 779, 784 (2004). This right is "not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Commonwealth* v. *Farley, supra,* quoting from *Commonwealth* v. *Francis*, 375 Mass. 211, 214, cert. denied, 439 U.S. 872 (1978). "When properly invoked, the Fifth Amendment privilege against self-incrimination clearly is one of those interests." *Commonwealth* v. *Farley, supra.*

As the standards are "highly protective of the constitutionally guaranteed right against self-incrimination," we construe a claim of privilege broadly in determining whether its invocation was justified. *Ibid.* "We have long held that a 'witness's decision not to testify on Fifth Amendment grounds must be honored unless it is *perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency to incriminate.'" *Commonwealth* v. *Freeman, supra* at 784-785, quoting from *Commonwealth* v. *Pennellatore*, 392 Mass. 382, 389 (1984). As such, we must determine whether a witness's claim of privilege is "predicated on a 'real risk' of incrimination, not just 'a mere imaginary, remote or speculative possibility of prosecution.'" *Commonwealth* v. *Farley*, 443 Mass. at 749, quoting from *Commonwealth* v. *Dagenais*, 437 Mass. 832, 839 (2002).

In determining that Noble could invoke his Fifth Amendment privilege in relation to prospective questions about the shotgun, the motion judge did not abuse her discretion. See *Commonwealth* v. *Drew*, 397 Mass. 65, 70 (1986); *Commonwealth* v. *Degrenier*, 40 Mass. App. Ct. 212, 215 (1996). Here, the motion judge recognized that if Noble were required to testify, he could be subjected to further criminal prosecution in relation to how he obtained the weapon and why he had it in his possession. See *Commonwealth* v. *Freeman, supra* at 785. This included prosecution for conspiracy stemming from the June robbery and July search.

Here, the only other testimony that Noble might have provided concerned the identity of the assailant in the June 14, 2002, robbery. Defense counsel, however, did not clearly raise this issue at the hearing. Moreover, there may very well have been a strategic reason that this question was not presented at the pretrial hearing, as Noble's testimony on this point was arguably just as likely to implicate Wooden in the June 14, 2002, robbery as it was to exculpate him. Indeed, it is instructive that after the motion judge's ruling that Noble had a valid Fifth Amendment privilege with respect to the July search, counsel did not press the issue of the privilege with respect to the June robbery, further suggesting that this was testimony that would not have advanced the defendant's cause. Lastly, even if the answer to this initial question regarding the identity of the assailant was not necessarily incriminatory, subsequent questions relating to Noble's reason for being at the scene could have exposed him to further criminal liability, including possible involvement in a conspiracy with the assailant.[3] There was no error.

Once the motion judge denied the motion to compel testimony, the defendant's counsel retained the option to request that the judge grant Noble immunity.[4] Counsel did not make such a request, nor was a judicial grant of immunity even mentioned. For the first time on appeal, the defendant asserts that "unique circumstances" of due process and fundamental fairness require a grant of immunity to Noble as a constitutional right.[5]

The Supreme Judicial Court has "declined to recognize a

---

[3]As defense counsel presented only one clear issue to the motion judge (the July search), the defendant's appellate argument regarding Noble's blanket assertion of the Fifth Amendment privilege is inapposite. *Commonwealth* v. *Martin,* 423 Mass. 496, 502 (1996) ("A witness also is not entitled to make a blanket assertion of the privilege. The privilege must be asserted with respect to particular questions, and the possible incriminatory potential of each proposed question, or area which the prosecution might wish to explore, must be considered").

[4]For the first time on appeal, defendant argues that the motion judge should have postponed making the Fifth Amendment determination until the trial proceeded. Counsel did not make an issue of the timing of the hearing on the Fifth Amendment privilege. We see no error in holding a pretrial hearing to determine whether a witness has a valid Fifth Amendment privilege.

[5]Asserting that the Commonwealth had no countervailing interests to oppose immunity, defendant also contends that because the Commonwealth had

defendant's constitutional right to a judicial grant of immunity to defense witnesses," *Commonwealth* v. *Doherty*, 394 Mass. 341, 344 (1985), stating that "[t]he decision whether to grant immunity generally lies in the hands of the prosecutor." *Ibid.* "[W]ithout precluding the possibility that in some unique circumstances . . . due process may require the granting by a judge of a limited form of immunity, we decline to hold that the compulsory process provisions of the Federal Constitution applicable to the States through the due process clause of the Fourteenth Amendment, or the cognate provisions of our State Constitution, mandate a grant of immunity to the prospective defense witness . . . ." *Commonwealth* v. *Curtis*, 388 Mass. 637, 646 (1983). See *Commonwealth* v. *Grimshaw*, 412 Mass. 505, 512 (1992) (unique circumstances not shown). See generally Smith, Criminal Practice and Procedure § 818.

By failing to present the issue of immunity to the motion judge, defendant's counsel did not provide an occasion for the judge to consider the appropriateness of granting judicial immunity to Noble. As such, the motion judge had no opportunity to evaluate whether the Commonwealth's interest in preventing Noble's testimony was valid or whether Noble's testimony would actually exculpate the defendant. Cf. *Commonwealth* v. *Doherty*, 394 Mass. at 346 (where "judge's factual findings [after a hearing] do not support the defendant's claim of 'unique circumstances' which would warrant [the witness's] immunization, the judge properly declined to order immunity outside the prescribed statutory scheme"). Absent such a request, the defendant cannot now argue for the first time on appeal that the judge, independently, should have granted Noble immunity. To suggest otherwise would encourage inappropriate gamesmanship. *Government of the Virgin Islands* v. *Smith*, 615 F.2d 964, 971 (3d Cir. 1980), citing *Williams* v. *Florida*, 399 U.S. 78, 82 (1970) (trial should not be turned "into a mere 'poker game' to be won by the most skilled tactician").

Moreover, we note that even if defense counsel had made the request for a judicial grant of immunity, it appears that the judge

---

virtually exhausted the charges against Noble, there was little likelihood of Noble being an actual or potential target of an ongoing investigation relating to the matter.

would not have abused her discretion if she had denied the request. See *Commonwealth* v. *Reynolds,* 429 Mass. 388, 400 (1999); *Commonwealth* v. *Drew,* 447 Mass. 635, 645 (2006), quoting from *Commonwealth* v. *Doherty,* 394 Mass. at 345 ("Judicial immunity is not available if the prospective witness is an actual or potential target of prosecution" or if the testimony "is found to be ambiguous, not clearly exculpatory, cumulative or . . . relate[s] only to the credibility of the government's witnesses"). Although the Commonwealth may have virtually exhausted the charges against Noble in relation to the June robbery, Noble's testimony could have been incriminating. See *Commonwealth* v. *Freeman, supra* at 785 ("[P]rivilege extends not only to answers that would in themselves support a conviction, but also to those that would furnish a link in the chain of evidence needed to prosecute the witness"). Even if Noble testified that he did not obtain the shotgun from the defendant, this does not foreclose the possibility that the shotgun was passed from the defendant to a third party and then to Noble. See *Commonwealth* v. *Doherty, supra* at 345 (permissible to deny immunity if proffered statement not clearly exculpatory). Similarly, given Noble's guilty pleas to multiple charges stemming from the June robbery (including joint venture), it is distinctly possible that Noble might have testified that the defendant was his coventurer. *Ibid.*

2. *Duplicative convictions.* The defendant contends that the convictions on Count I (armed robbery) and Count II (armed assault with intent to rob) are duplicative. This argument, however, ignores that the judge — in this case the fact finder — could have determined that the two charges arose from separate and distinct acts during the June robbery. See *Commonwealth* v. *Maldonado,* 429 Mass. 502, 509 (1999). Our own review of the testimony indicates that the judge could have found that the taking of Rock's money and jewelry at gunpoint constituted a separate and distinct act from the defendant's unsuccessful later attempt to steal the car from Rock and Dudley while he held them at gunpoint. Moreover, the judge could have concluded that the defendant approached as a coventurer with the intent to steal the money Rock intended to use for his car payment. Based on the evidence, the judge could have further deter-

mined that once the defendant was unable to obtain the money, the defendant developed a separate intent to steal the car, apart from his earlier agreement with Noble. This involved distinct offenses against both Rock and Dudley. See *Commonwealth* v. *Gallant*, 65 Mass. App. Ct. 409, 415 (2006) ("Where convictions are based on *distinct* acts, it is unnecessary even to consider whether the offenses contain mutually exclusive elements; multiple punishments are authorized in any event"). These instances were therefore not so closely related in fact as to constitute a single crime. *Ibid.*

*Judgments affirmed.*