MARCUS PIXLEY vs. COMMONWEALTH.

Suffolk. March 3, 2009. - May 19, 2009.

Present: MARSHALL, C.J., SPINA, COWIN, BOTSFORD, & GANTS, JJ.

*Practice, Criminal,* Transcript of hearing. *Constitutional Law,* Self-incrimination. *Witness,* Privilege, Self-incrimination. *Supreme Judicial Court,* Appeal from order of single justice.

A single justice of this court properly denied the criminal defendant's interlocutory request for relief, where the issue presented could be resolved by the Appeals Court during the ordinary course of appellate review. [831]

This court concluded that where a judge, after holding an in camera hearing pursuant to *Commonwealth* v. *Martin*, 423 Mass. 496 (1996), finds that a witness has a valid basis for invoking the privilege against self-incrimination if called to testify at a criminal defendant's trial, the Justices of the Appeals Court, if necessary in deciding the defendant's appeal from his subsequent judgments of conviction, may review the transcript of that hearing, but otherwise, the transcript should remain sealed. [832-837]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 5, 2008.

The case was heard by *Cordy*, J.

*Jane E. Ross* for the plaintiff.

*Joseph M. Ditkoff,* Assistant District Attorney (*Mark D. Zanini,* Assistant District Attorney, with him) for the Commonwealth.

*David M. Skeels,* Committee for Public Counsel Services, for Committee for Public Services, amicus curiae, submitted a brief.

GANTS, J. At his jury trial on narcotics charges in December, 2005, the defendant sought to call a witness in his defense, who informed the court, through counsel, that he intended to assert his privilege against compulsory self-incrimination under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The trial judge held an in camera hearing pursuant to *Commonwealth* v. *Martin*, 423 Mass. 496 (1996) (*Martin* hearing), to determine whether the

witness had a valid Fifth Amendment privilege, and found that he did. The witness thereupon refused to testify on the defendant's behalf. Having been convicted of the charges against him, the defendant filed an appeal in the Appeals Court from the judgments of conviction and, as part of his appeal, seeks to challenge the judge's finding. The transcript of what was said during the *Martin* hearing has been impounded and transferred to the Appeals Court, and proceedings there have been stayed pending resolution of this appeal.

The issue presented is whether defense counsel is entitled to full disclosure of the impounded transcript, to share its contents with the defendant, and to refer to its contents in the defendant's appellate brief before the Appeals Court. The case is before us by way of the defendant's appeal from the judgment by the single justice in the county court denying his petition pursuant to G. L. c. 211, § 3. We conclude that neither the defendant nor defense counsel is entitled to disclosure of the impounded transcript; only the Justices of the Appeals Court may examine its contents, if necessary, to decide the merits of the defendant's appeal. Accordingly, we affirm the denial of the defendant's petition.

*Background.* The evidence at trial reflected that, on March 2, 2005, two undercover law enforcement officers (an Everett police officer and a Middlesex County deputy sheriff) entered a McDonald's restaurant in Boston. The defendant and Dwayne Gillum entered the restaurant, and Gillum told the undercover officers to sit down at a small table. Moments later, the defendant sat down at a table behind them. One officer told the defendant that he had forty dollars, and the defendant responded, "My boy will hook you up." The defendant walked over to Gillum, and both men returned together and sat down. The defendant said, "Give me the money." The officer gave two twenty dollar bills (with prerecorded serial numbers) to the defendant, who handed them to Gillum. Gillum in turn gave a plastic bag to the defendant, who handed it to the officer. The defendant and Gillum left the restaurant in different directions and were arrested by Boston police officers shortly thereafter. In his right hand, Gillum still held the forty dollars given to him by one of the undercover officers. The plastic bag was later determined to contain two pieces of "crack" cocaine.

A Suffolk County grand jury returned indictments against the defendant charging distribution of cocaine (second offense) in violation of G. L. c. 94C, § 32A (d); being a habitual criminal in violation of G. L. c. 279, § 25; selling drugs in a school zone in violation of G. L. c. 94C, § 32J; and conspiracy to violate the drug laws in violation of G. L. c. 94C, § 40. The same grand jury returned indictments against Gillum charging violations of G. L. c. 94C, § 32A (d) (two indictments); G. L. c. 94C, § 32J (two indictments); and G. L. c. 94C, § 40.

Gillum entered guilty pleas to two charges of distribution of cocaine, to one charge of distributing in a school zone, and to the charge of conspiracy.[1] He was sentenced on the first three of his convictions; his conviction of conspiracy was placed on file with his consent without the imposition of sentence.

The defendant was tried by a jury on the drug distribution and school zone charges and summonsed Gillum to testify as a defense witness. The judge appointed counsel to represent Gillum in his capacity as a witness. On the second day of trial, Gillum's counsel informed the court that Gillum would invoke his privilege against compulsory self-incrimination. On the request of Gillum's counsel, the judge held an in camera *Martin* hearing. At the conclusion of the hearing, the judge stated that she was satisfied that Gillum had a valid Fifth Amendment privilege. The judge considered whether Gillum could testify on a question-by-question basis to permit the defendant to present some of his testimony to the jury. She ultimately concluded, however, that if she instructed Gillum to answer certain questions on direct examination and if the Commonwealth attempted to impeach him with questions concerning the indictments to which he had entered guilty pleas, he would have a valid Fifth Amendment privilege as to those questions on cross-examination and his entire testimony would need to be struck, resulting in a mistrial.

The judge then asked the prosecutor to summarize his anticipated cross-examination of Gillum. The prosecutor proffered that Gillum had various other criminal charges pending against him involving drug transactions in which Gillum allegedly used an accomplice. He said he would explore on cross-examination

---

[1]One charge against Gillum of selling drugs in a school zone was dismissed.

"how [Gillum] deals drugs, how he uses other people [to distance himself] from the transactions, from prosecution and arrest; how [the defendant] may have played into that, not only in the March occasion on trial but other occasions." The judge concluded, "I think if any of that was gotten into (and cross-examination is fairly broad, wide latitude), I'd have to strike all of his testimony because he certainly would have a Fifth Amendment privilege with respect to those kinds of questions." The judge then excused Gillum as a witness and noted the defendant's objection.

The defendant, the only person to testify for the defense, told the jury that he never went into the restaurant on March 2, 2005. The jury, who as part of the Commonwealth's case had been shown videotapes of the entire transaction recorded by the restaurant's security cameras that day, convicted the defendant of both charges against him. The defendant thereafter waived his right to a jury trial on the second offense portion of the distribution charge and on the charge of being a habitual criminal. Following a bench trial, the judge returned guilty verdicts against the defendant on the charges remaining against him.[2]

Represented by new counsel, the defendant filed an appeal in the Appeals Court from the judgments of conviction. As has been indicated, the in camera *Martin* hearing had been transcribed but was impounded and, therefore, was omitted from the copies of the trial transcript given to the parties. On February 29, 2008, the defendant filed a motion for access to the transcript of the *Martin* hearing. A different judge in the Superior Court allowed the defendant's appellate counsel to read the impounded transcript but forbade her from taking notes or making copies. The judge stated that if, after such review, counsel determined that there was an appellate issue, the judge would then consider a request for further access.[3]

After reviewing the impounded *Martin* hearing transcript, the defendant's appellate counsel determined that there was an appellate issue regarding the judge's Fifth Amendment ruling and

---

[2]The conspiracy charge, with the defendant's consent, was placed on file without a change of plea.

[3]The Commonwealth challenged this ruling in a petition filed in the county court pursuant to G. L. c. 211, § 3. A single justice of this court denied the petition. This denial is not at issue in this case.

filed two motions. The first, to transfer the impounded transcript to the Appeals Court, was allowed by a third judge in the Superior Court. The second, for permission to copy the impounded transcript, share its contents with the defendant, and disclose it in an appellate brief (which also would be impounded[4]), was the subject of a hearing held by that judge. At the hearing, an investigator for the Suffolk County district attorney's office informed the judge that Gillum had been located in Georgia, where he now lived, and had told the investigator that he did not object to defendant's appellate counsel gaining access to what Gillum had revealed in confidence during the *Martin* hearing.[5] After the hearing, the judge denied the defendant's motion without prejudice, observing that the motion "raises serious constitutional issues which have not been addressed by the appellate courts in Massachusetts."

The defendant filed a G. L. c. 211, § 3, petition seeking the relief sought in the second motion filed in the Superior Court. The single justice denied the petition without a hearing, declaring that the issues raised by the defendant "can be effectively remedied, if necessary, under the ordinary process of appellate review." The defendant now appeals from the single justice's denial of his petition seeking further access to the impounded *Martin* hearing transcript.

*Discussion.* We agree with the single justice that the issue presented by the defendant's interlocutory request for relief could be resolved by the Appeals Court during the ordinary course of appellate review. We take this opportunity to elaborate on the procedure to be followed in the Appeals Court, because the defendant's petition presents a constitutional question of first impression, and the parties have fully briefed and argued the issue presented. We now address the concerns raised in the defendant's petition.

---

[4]Rule 16 (m) of the Massachusetts Rules of Appellate Procedure, 425 Mass. 1601 (1997), provides that counsel must alert the clerk's office, and all parties, to the presence of impounded material. The rule cautions that "[w]herever possible, counsel shall not disclose impounded material." See Mass. R. A. P. 18 (g), 425 Mass. 1602 (1997) (providing that cover of appendix must indicate that it contains impounded material).

[5]Gillum was not represented by counsel at the time he appeared to consent to the disclosure of the impounded transcript. Neither party has argued that the investigator's testimony is relevant to our resolution of the issues in this appeal.

The proscription of the Fifth Amendment that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself" may be invoked whenever a witness reasonably believes that the testimony could be used in a criminal prosecution or could lead to other evidence that might be so used. See *Kastigar* v. *United States,* 406 U.S. 441, 444-445 (1972); *Commonwealth* v. *Funches,* 379 Mass. 283, 289 (1979).[6] "A witness may refuse to testify unless it is *'perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency'* to incriminate (emphasis in original)." *Id.,* quoting *Hoffman* v. *United States,* 341 U.S. 479, 488 (1951). A witness may not, however, invoke his privilege against self-incrimination because he would prefer not to testify, whether the reason be fear, personal loyalty to the defendant, or simply a desire to avoid involvement in the case; the circumstances must clearly indicate a possibility of self-incrimination. See *Commonwealth* v. *Martin,* 423 Mass. 496, 502-503 (1996). The burden is on the witness to show "a real risk that his answers to questions will tend to indicate his involvement in illegal activity, 'and not a mere imaginary, remote or speculative possibility of prosecution.' " *Id.* at 502, quoting *In re Morganroth,* 718 F.2d 161, 167 (6th Cir. 1983).

When a witness, directly or through counsel, declares his intent to invoke the privilege against self-incrimination and the party who had intended to call the witness challenges whether the privilege has been properly invoked, the trial judge must make an informed determination whether the witness has established a real risk that his testimony could possibly tend to incriminate him. In the *Martin* decision, we declared that this determination can usually be based on information made known to the judge in open court. See *Commonwealth* v. *Martin, supra* at 504. We recognized, however, that there may be exceptional circumstances where a potential witness asserts a claim of privilege and the information available to the judge does not, in the judge's esti-

---

[6]We have found that art. 12 of the Massachusetts Declaration of Rights provides broader protection from self-incrimination than does the Fifth Amendment to the United States Constitution. See *Commonwealth* v. *Mavredakis,* 430 Mass. 848, 858-859 (2000).

mation, allow her adequately to assess the merits of the witness's assertion of the privilege. See *id.* In these circumstances, an in camera hearing may be conducted (between the judge, the witness, and, in most cases, the witness's counsel) in which the witness is required to disclose to the judge the limited amount of additional information necessary for the judge to verify the claim of privilege. *Id.* When a *Martin* hearing is held, the inquiry of the witness should be strictly limited (the judge should "open the door a crack") to allow the judge just enough information to assess the witness's invocation of the privilege under the generous standard described above. *Id.*, quoting *In re Brogna*, 589 F.2d 24, 28 n.5 (1st Cir. 1978).

We emphasize that a *Martin* hearing should be conducted only as an exception to the general rule that the judge's verification of the validity of the privilege be based on information provided in open court. See *Commonwealth* v. *Sanders*, 451 Mass. 290, 295-296 (2008). Indeed, before a *Martin* hearing is conducted, the judge should invite the parties to provide the court with information that may shed light on whether the witness's testimony, both on direct and cross-examination, could possibly tend to incriminate him. Only in those rare circumstances where this information is inadequate to allow the judge to make an informed determination should the judge conduct an in camera *Martin* hearing with the witness to verify the claim of privilege.

When a judge, as here, rules that the defense witness has a valid privilege against self-incrimination and excuses him from testifying, the defendant, after conviction, has standing to challenge the merits of the judge's ruling in his direct appeal. See *Commonwealth* v. *Freeman*, 442 Mass. 779, 784-786 (2004). The defendant argues in essence that his right to challenge the judge's ruling on appeal as clear error or an abuse of discretion is hollow without further disclosure of the impounded *Martin* hearing transcript to himself and to his counsel, and without allowing him to use the content of the impounded transcript in his impounded brief. We understand that denying the defendant and his attorney access to the *Martin* hearing transcript limits the defendant's ability to argue the issue on appeal. We conclude that any prejudice to the defendant arising from this limitation is minimal and is overcome by the constitutional imperative to

protect the witness's privilege against compulsory self-incrimination.

"Although both the Sixth Amendment [to the United States Constitution] and art. 12 guarantee a defendant's right to present a defense, including the right to call witnesses on behalf of the defense, this right is not absolute." *Commonwealth* v. *Freeman*, *supra* at 784, citing *Commonwealth* v. *Dagenais*, 437 Mass. 832, 839 (2002). We have held many times that a defendant has no constitutional right to the testimony of a defense witness who invokes his privilege against self-incrimination. See, e.g., *Commonwealth* v. *Drew*, 447 Mass. 635, 645 (2006), cert. denied, 550 U.S. 943 (2007); *Commonwealth* v. *Doherty*, 394 Mass. 341, 344 (1985); *Commonwealth* v. *Pennellatore*, 392 Mass. 382, 388-389 (1984); *Commonwealth* v. *Curtis*, 388 Mass. 637, 646 (1983), *S.C.*, 417 Mass. 619 (1994). Put differently, a witness's valid assertion of the Fifth Amendment privilege against self-incrimination trumps a defendant's right to call the witness. See *Commonwealth* v. *Drumgold*, 423 Mass. 230, 247-248 (1996).[7]

A *Martin* hearing poses the unique situation of compelling potentially incriminating testimony from a reluctant witness for the sole purpose of determining whether the witness has a valid privilege against self-incrimination. Having compelled such testimony, the court has an obligation to ensure that the compelled testimony not be used in any way, directly or indirectly, against the witness in any criminal case. See *Kastigar* v. *United States*,

---

[7]We have not precluded the possibility that "in some unique circumstances . . . due process may require the granting by a judge of a limited form of immunity" to a witness in order to gain his or her testimony. *Commonwealth* v. *Curtis*, 388 Mass. 637, 646 (1983), *S.C.*, 417 Mass. 619 (1994). We are aware of no instance, however, in which an appellate court has deemed this type of judicial immunity to be appropriate. See *Commonwealth* v. *Drew*, 447 Mass. 635, 645 (2006), cert. denied, 550 U.S. 943 (2007); *Commonwealth* v. *Reynolds*, 429 Mass. 388, 400 (1999); *Commonwealth* v. *Grimshaw*, 412 Mass. 505, 512 (1992); *Commonwealth* v. *Doherty*, 394 Mass. 341, 345 (1985); *Commonwealth* v. *Upton*, 390 Mass. 562, 577 (1983), rev'd, 446 U.S. 727, *S.C.*, 394 Mass. 363 (1985); *Commonwealth* v. *Wooden*, 70 Mass. App. Ct. 185, 191-192 (2007); *Commonwealth* v. *Cash*, 64 Mass. App. Ct. 812, 817 (2005). See also *Curtis* v. *Duval*, 124 F.3d 1, 9 (1st Cir. 1997) (suggesting that judicial immunity might be warranted in circumstances where prosecution attempted to intimidate potential witness or deliberately withheld immunity to hide exculpatory evidence from jury).

406 U.S. 441, 449 (1972); *Commonwealth* v. *Austin A.*, 450 Mass. 665, 667-668 (2008).[8] To allow the defendant to argue the content of the *Martin* hearing before the Appeals Court would, out of fairness, require that the prosecution be given access to the impounded transcript as well.[9] This would defeat, for practical purposes, the reason for conducting the *Martin* hearing in camera in the first place, which was not simply to delay disclosure until appeal but to prevent disclosure entirely. Were we to allow disclosure of the impounded transcript to the defendant or defense counsel but bar its use in appellate argument, we would not meaningfully improve the defendant's ability to challenge the judge's ruling on appeal, but we would significantly increase the risk of further dissemination of the compelled testimony and of injury to the witness arising from such dissemination.

We do not credit the defendant's assertion that, without access to the transcript of the hearing, he has no meaningful opportunity to appeal from the judge's determination. The Appeals Court has possession of the impounded transcript and will be able fully to assess the merits of the judge's determination on its own. Indeed, we think it unlikely, even with full disclosure and a full opportunity to argue the issue, that defense counsel would materially assist an appellate court in determining whether the trial judge erred in finding a valid invocation of the privilege follow-

---

[8]Under the Fifth Amendment, a witness may not be compelled to testify unless the witness is granted use immunity, which protects the witness from any use of his compelled testimony (or evidence directly or indirectly derived from his testimony) against him in a criminal case. See *Kastigar* v. *United States*, 406 U.S. 441, 449 (1972); *United States* v. *Poindexter*, 951 F.2d 369, 373 (D.C. Cir. 1991), cert. denied, 506 U.S. 1021 (1992). See also *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 795 (1982). We have held that when the prosecution obtains statutory immunity for a witness, art. 12 requires that the immunity be transactional immunity, granting immunity from prosecution for any offense "to which compelled testimony relates." *Id.* at 795 & n.4, quoting *Kastigar* v. *United States*, supra at 443. See *Commonwealth* v. *Upton*, supra at 577, citing *Attorney Gen.* v. *Colleton*, supra at 795-797. We do not suggest that a witness would be entitled to transactional immunity because his testimony was compelled at an in camera hearing pursuant to *Commonwealth* v. *Martin*, 423 Mass. 496 (1996) (*Martin* hearing).

[9]We reject any suggestion that disclosure of the impounded transcript could be permitted to the defendant but denied to the Commonwealth when a conclusion by the Appeals Court that the judge abused her discretion in determining Gillum's claimed privilege to be valid could possibly cause the reversal of the defendant's convictions.

ing a *Martin* hearing.[10] In the *Martin* case, we decided that this determination can adequately be made by a trial judge alone, without disclosure to the parties of the content of the *Martin* hearing. We decide here that the more limited determination on appeal of whether the judge erred in finding a valid invocation of the privilege can adequately be made by the appellate Justices alone, without disclosure to the parties of the content of the *Martin* hearing.[11]

In adopting the *Martin* procedure, we envisioned that the transcript of the hearing would by necessity be sealed and reopened only by an appellate court on appellate review.[12] See *Commonwealth* v. *Martin, supra* at 505. We now conclude that

---

[10]The issue to be decided during the defendant's direct appeal will not be whether Gillum's testimony at the *Martin* hearing may have been exculpatory to the defendant in the context of his trial, but whether it may have been incriminatory to Gillum in the context of criminal proceedings facing him then or in the future. A defense counsel's detailed knowledge of the facts of the case may greatly assist the court in determining whether information is exculpatory to the defendant, but is of little or no value in determining whether it is perfectly clear that the witness's testimony cannot possibly tend to incriminate the witness.

[11]Our decision is in accord with Federal decisions that have considered the issue. See *United States* v. *Petrie*, 302 F.3d 1280, 1289 (11th Cir. 2002), cert. denied, 538 U.S. 971 (2003); *United States* v. *Fricke*, 684 F.2d 1126, 1131 (5th Cir. 1982), cert. denied, 460 U.S. 1011 (1983) (acknowledging that defendant did not have access to sealed record of in camera proceeding; assuring defendant that appellate court had carefully examined it). See also *United States* v. *Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980) (approving use of in camera proceeding); *In re Brogna*, 589 F.2d 24, 28 & n.5 (1st Cir. 1978).

[12]The terms "impounded" and "sealed" are closely related and often used interchangeably, but are meaningfully different. Under the Uniform Rules of Impoundment Procedure 1708 (LexisNexis 2008), which govern impoundment in civil proceedings and guide practice in criminal matters as well, "impoundment" means "the act of keeping some or all of the papers, documents, or exhibits, or portions thereof, in a case separate and unavailable for public inspection." Rule 1 of the Uniform Rules of Impoundment Procedure. Consequently, an order of impoundment prevents the public, but not the parties, from gaining access to impounded material, unless otherwise ordered by the court. A document is normally ordered "sealed" when it is intended that only the court have access to the document, unless the court specifically orders limited disclosure. Therefore, we directed in *Commonwealth* v. *Martin, supra* at 505, that the record of the in camera hearing "should be kept, under seal." Similarly, we ordered that privileged psychological or counselling records of an alleged victim of a sexual assault be "retained in court under seal," but permitted defense counsel to have access pursuant to a strict protective order. *Commonwealth* v. *Dwyer*, 448 Mass. 122, 146 (2006). The judge in this

further disclosure of Gillum's testimony at the *Martin* hearing to defense counsel or the defendant is prohibited by art. 12 and the Fifth Amendment.

*Conclusion.* The judgment of the single justice denying the defendant's G. L. c. 211, § 3, petition is affirmed. We remand the matter to the county court, where the single justice shall enter an order consistent with this opinion directing that the impounded *Martin* hearing transcript may be reviewed, if necessary, by Justices in the Appeals Court deciding the defendant's appeal from his judgments of conviction, but otherwise should remain sealed.

*So ordered.*

case ordered the *Martin* hearing transcript to be impounded, but it is plain from the record that all involved understood her order also to direct the sealing of the transcript, with disclosure to a party permitted only by order of the court. We think it best that in the future the transcript, or recording, of a *Martin* hearing be ordered sealed and kept under seal until further order of the court.