SUPREME JUDICIAL COURT 
 
 MARK GRAVITO vs. COMMONWEALTH

 
 Docket:
 SJC-13705
 
 
 Dates:
 September 5, 2025 - November 25, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Sealing. Criminal Records. Practice, Criminal, Record. Statute, Construction. Supreme Judicial Court, Superintendence of inferior courts.
 
 

             Civil action commenced in the Supreme Judicial Court for the county of Suffolk on September 19, 2024.
            The case was reported by Kafker, J.
            Joshua M. Daniels for the petitioner.
            Rachel J. Eisenhaure, Assistant District Attorney, for the Commonwealth.
            Rebecca Kiley & Jennifer Klein, Committee for Public Counsel Services, Claudia Leis Bolgen, & Matthew V.P. McTygue, for Committee for Public Counsel Services & others, amici curiae, submitted a brief.
            Pauline Quirion for Greater Boston Legal Services & another, amici curiae, submitted a brief.
            WENDLANDT, J.  Pursuant to G. L. c. 276, § 100C, first par. (automatic sealing statute), court records of proceedings where a defendant is found not guilty must be sealed.  Enacted in 1973, the statute was intended to protect individuals against the collateral consequences that may flow from the public's continued access to court records concerning a criminal offense of which the individual has been acquitted.  Recognizing that an individual may determine that permitting records evincing an acquittal to remain public better serves his or her interest, the Legislature provided the individual an avenue to opt not to seal such records (opt-out provision).
            In this case, we consider the application of the statute in a mixed verdict case, where the jury acquitted a defendant of some, but not all charges.  Previously, we determined that, unless the defendant opts otherwise, the statute requires that records pertaining to the acquitted offenses be sealed.  See Commonwealth v. J.F., 491 Mass. 824, 839 & n.16 (2023).  We now turn to the question whether, absent the exercise of the opt-out provision, the statute precludes a defendant and his appellate counsel from accessing sealed records from a mixed verdict case.  We conclude that it does not.[1]
            1.  Background.  In March 2019, the defendant, Mark Gravito,[2] was indicted on six counts involving the sexual abuse of three minors.  The matters were joined for trial.  On November 15, 2023, a jury acquitted the defendant on five counts, which related to two of the minors, but found the defendant guilty of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B, related to the third minor.  The defendant timely filed a notice of appeal.
            In February 2024, the Executive Office of the Trial Court issued Transmittal No. 24-4 (transmittal no. 24-4), and a written notice was sent to the defendant informing him that the records relating to the counts of which he had been acquitted would be automatically sealed unless he notified the Commissioner of Probation (commissioner) in writing within one month that he was exercising the option not to seal the records.[3]  The notice also stated that the defendant would not have access to the records once they were sealed.[4]  The defendant did not respond, and some of the defendant's records were sealed.
            Thereafter, the defendant was appointed appellate counsel, who attempted to obtain copies of the defendant's trial records, including those pertaining to the acquittals.  Appellate counsel learned that the documents corresponding to ten docket entries (sought documents) had been sealed.
            Appellate counsel filed a motion to access the sought documents, asserting that the denial of access hampered the ability to make informed decisions as to the issues to raise on appeal.  Responding to the directive of the motion judge, the defendant submitted an affidavit authorizing appellate counsel's access to the sought documents but requesting that the documents be resealed thereafter.
            Eventually, the motion judge allowed appellate counsel limited access to the sought documents, permitting appellate counsel to view them at the clerk's office, under supervision, and to take notes, but declining to allow counsel to make copies of the documents.[5]  Concluding that the automatic sealing statute and transmittal no. 24-4 prohibited the defendant and his appellate counsel from accessing the defendant's sealed records, the motion judge relied on his inherent authority to permit limited access to protect the defendant's constitutional right to the effective assistance of appellate counsel.  The defendant petitioned a single justice of this court pursuant to G. L. c. 211, § 3, seeking review of the motion judge's order.  The single justice reserved and reported the defendant's petition to the full court to determine whether and to what extent a defendant's appellate counsel may access court records of a defendant's criminal case sealed pursuant to the automatic sealing statute.
            2.  Discussion.  a.  Standard of review.  Ordinarily, we review a judge's decision as to the scope of discovery for an abuse of discretion.  See J.F., 491 Mass. at 839.  "Under [this] standard, the issue is whether the judge's decision resulted from a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation omitted).  Id., quoting Commonwealth v. Kolenovic, 471 Mass. 664, 672 (2015), S.C., 478 Mass. 189 (2017).
            Because the judge's decision also raises an issue of statutory construction, however, we review the legal issue de novo.  See Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).  In construing a statute, "our analysis begins with the principal source of insight into legislative intent - the plain language of the statute" (quotations and citation omitted).  Patel v. 7-Eleven, Inc., 489 Mass. 356, 362 (2022), S.C., 494 Mass. 562 (2024).  "If the statutory language is clear and unambiguous, it is 'conclusive as to legislative intent.'"  Id., quoting Monell v. Boston Pads, LLC, 471 Mass. 566, 575 (2015).
"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."
Patel, supra at 362-363, quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).
            b.  A defendant's access to his sealed criminal records.  The automatic sealing statute mandates that where, inter alia, a defendant has been found not guilty, the commissioner "shall seal" the "court appearance and disposition" and the court clerk and probation officers "shall likewise seal the records of the proceedings in their files" unless the defendant makes a written request "not to seal" the records.[6]  G. L. c. 276, § 100C, first par.  The statute is silent whether a defendant, or a defendant's appellate counsel, may have access to the defendant's own sealed records.
            i.  Plain meaning.  To determine the Legislature's intent, we look first to the ordinary meaning of words in the statute.  See Garcia v. Steele, 492 Mass. 322, 326 (2023) ("It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" [quotations and citation omitted]).  To "seal" a record means to prevent access to the record generally.  See Black's Law Dictionary 1621 (12th ed. 2024) (defining "seal" as "[t]o prevent access to [a document, record, etc.], esp[ecially] by court order"); Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary
/seal [https://perma.cc/RRX7-QB9P] (defining "seal" as "to close or make secure against access, leakage, or passage by a fastening or coating").  See also note 16, infra.  Thus, the ordinary meaning of "seal" focuses on precluding public access to the record;[7] it is not clear whether the subject of the sealed record also should be prevented from accessing it.
            The surrounding context of the statutory provision fails to clarify this ambiguity.  See Garcia, 492 Mass. at 326 ("We do not construe terms in isolation; instead, we consider the specific language of a provision in the context of the statute as a whole").  On the one hand, pursuant to G. L. c. 276, § 100D, "criminal justice agencies," a term that does not include the defendant,[8] continue to have access to records sealed under the automatic sealing statute, arguably suggesting that the Legislature intended to preclude the defendant and his counsel from accessing the defendant's own sealed records pursuant to the maxim "expressio unius est exclusio alterius."  See Ciampi v. Commissioner of Correction, 452 Mass. 162, 169 (2008) (noting that "maxim that expression of one thing is implied exclusion of other things is not conclusive of legislative intent, but is to be considered with regard to the object sought to be obtained by the entire legislation of which the subject-matter to which it relates is but a part" [quotation and citation omitted]).
            On the other hand, the provisions immediately following the automatic sealing statute reflect the Legislature's aim to protect a defendant's privacy and society's interest in rehabilitation, particularly where continued public access to records might interfere with a defendant's reintegration efforts.  See Commonwealth v. Pon, 469 Mass. 296, 301, 307 (2014).  The Legislature provided that records sealed under the statute shall not disqualify the subject of the sealed records from public employment, G. L. c. 276, § 100C, third par.; that an application to screen applicants for "employment, housing or an occupational or professional license" must include a statement that the applicant may answer "no record" in response to queries that would otherwise elicit information from sealed records, G. L. c. 276, § 100C, fourth par.; and that the commissioner and the court clerk must report that "no record exists" in response to inquiries by "authorized persons other than any law enforcement agency or any court," G. L. c. 276, § 100C, fifth par.  Precluding access to sealed records as it relates to the general public furthers these provisions; precluding access to the defendant and appellate counsel does not.
            Indeed, while the automatic sealing statute sets a default of mandatory sealing of criminal records in cases that result in not guilty verdicts (among other dispositions), the opt-out provision authorizes the defendant who is the subject of such records to request that the records not be sealed, thereby allowing them to remain available to the public.  G. L. c. 276, § 100C, first par. ("The provisions of this paragraph shall not apply if the defendant makes a written request to the commissioner not to seal the records of the proceedings").  Placing control over whether a defendant's criminal records are sealed in the defendant's hands arguably suggests that the Legislature anticipated that the defendant would have continued access to his own records, at the least, to make an informed determination about whether to request that they not be sealed.
            In view of the foregoing, we conclude that the plain language of the statute is not conclusive whether the Legislature intended to permit or to preclude a defendant's and appellate counsel's access to records sealed pursuant to the automatic sealing statute.  Accordingly, we turn to the legislative history.  See Matter of the Estate of Mason, 493 Mass. 148, 152 (2023) ("Where the statutory language is not conclusive, we may turn to extrinsic sources, including the legislative history and other statutes, for assistance in our interpretation" [quotation and citation omitted]).
            ii.  Legislative history and intent.  As we have detailed recently,[9] the automatic sealing statute, together with, inter alia, the criminal offender record information act (CORI act),[10] forms part of a comprehensive system that reflects the Legislature's intent to balance the public's interest in having continued access[11] to certain criminal justice information and a defendant's interest in personal privacy as well as society's interest in facilitating the defendant's rehabilitation and reintegration.  See J.F., 491 Mass. at 833; Pon, 469 Mass. at 301.  See also Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 505 (1st Cir. 1989) ("The broad concern of [the automatic sealing statute] is to protect the privacy interests of criminal defendants whose cases have ended without a conviction").  The CORI act therefore permits prospective employers, housing providers, and other organizations to access some criminal records for limited purposes.  See G. L. c. 6, § 172 (a) (3).  See also J.F., supra at 832, quoting Pon, supra at 297 (noting that CORI act "extend[ed] access to official CORI records to more employers, housing providers, and other organizations, for limited use").
            At the same time, the Legislature recognized that "ready access to a defendant's prior criminal record might frustrate a defendant's access to employment, housing, and social contacts necessary to . . . rehabilitation."  J.F., 491 Mass. at 833, quoting Pon, 469 Mass. at 301.  Thus, the CORI act does not permit employers and housing providers to access sealed records, including those sealed pursuant to the automatic sealing statute.  See note 10, supra.  The CORI act and the automatic sealing statute together "indicate that the Legislature was concerned with the collateral consequences of criminal records and sought to make sealing broadly available to individuals whose criminal histories or records no longer presented concerns of recidivism" (citation omitted).  J.F., supra at 837.  Nothing in the legislative history suggests the Legislature intended to limit the defendant's own access to his sealed criminal records, let alone to preclude appellate counsel from accessing records necessary to provide effective assistance on appeal.  See Pon, supra at 300.
            Moreover, given the interrelationship between the CORI act and the automatic sealing statute, it is significant to our analysis that the CORI act explicitly grants a defendant who is the subject of sealed records "the right to inspect, and if practicable, obtain a copy of all criminal offender record information from the [Department of Criminal Justice Information Services] that refers to the subject," including those sealed pursuant to the automatic sealing statute (emphasis added).[12]  G. L. c. 6, § 175.  See G. L. c. 6, § 172 (a) (5) ("A subject who seeks to obtain his own criminal offender record information and the subject's legally designated representative may obtain all criminal offender record information from the department pertaining to the subject under [G. L. c. 6, § 175] [emphasis added]").  Thus, the CORI act indicates that, where the Legislature considered a defendant's access to his own sealed criminal offender record information, it has permitted it.[13]
            The automatic sealing statute requires the commissioner to seal the "court appearance and disposition recorded in his files" -- that is, information that falls within the definition of criminal offender record information under the CORI act, see note 12, supra -- and it requires the court clerk and probation officers to "likewise seal" the "records of the proceedings."  G. L. c. 276, § 100C, first par.  Under the CORI act, a defendant may inspect and copy the former information even if it is sealed.  Construing the automatic sealing statute to "likewise" permit a defendant's access to the latter therefore harmonizes the statute with the CORI act.[14]  See Care & Protection of Jaylen, 493 Mass. 798, 802 (2024) ("where two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose" [citation omitted]).[15]
            iii.  "Impounded" versus "sealed."  Relying on Pixley v. Commonwealth, 453 Mass. 827, 836 n.12 (2009), the Commonwealth contends that the term "seal" in the automatic sealing statute should be informed by the express definitions of the terms "seal" and "impound" in the Uniform Rules on Impoundment Procedure (2015) (URIP).  The URIP distinguishes "sealed" records, which the URIP generally defines as records "available to the court only," from "impounded" records, which generally also remain available to "attorneys of records, and the parties to the case."  See Rule 1(b)(9) of Uniform Rules on Impoundment Procedure.
            Given that the URIP definition of "sealed" was set forth in 1986, long after the enactment of the automatic sealing statute, and that the purpose of the URIP differs from the purpose of the automatic sealing statute, we disagree that the Legislature meant to adopt the URIP definitions.[16]  See Pon, 469 Mass. at 312 n.23 ("The broader scope of sealing presents somewhat different consequences and has an impact on different interests than impoundment does . . .").  Moreover, Pixley did not address whether a defendant may access his own sealed records; instead, the question we addressed in Pixley concerned a defendant's access to documents sealed to protect a third party's interests.[17]  See Pixley, 453 Mass. at 833-834.
            iv.  Opt-out provision.  The Commonwealth next maintains that the opt-out provision supports construing the automatic sealing statute to preclude the defendant and his appellate counsel from accessing the defendant's criminal records.  More specifically, the Commonwealth contends that the opt-out provision reflects the Legislature's intent to provide a defendant a one-time binary choice between reaping the benefits of the statute by precluding public access and declining such benefits in order to provide appellate counsel access to his criminal records for purposes of determining viable issues for an appeal.
            As discussed supra, however, the automatic sealing statute was intended to protect the defendant; specifically, it protects the defendant's privacy and society's interest in reintegration following an acquittal by precluding public access that might otherwise thwart a defendant's economic and other relationships.  The opt-out provision, in turn, reflects the Legislature's recognition that a defendant may make a different calculus based on his individual circumstances.  See J.F., 491 Mass. at 840 & n.18 (noting option to not seal record of acquittal may serve defendant's interests better than sealing).  Nothing in the automatic sealing statute's legislative history or the CORI act's scheme supports the conclusion that the Legislature intended for the opt-out provision to force the defendant to choose between the benefit of having his acquittals sealed and his right to the effective assistance of counsel on appeal.[18]  See Patel, 489 Mass. at 364, quoting Whitman v. American Trucking Ass'ns, 531 U.S. 457, 468 (2001) ("the Legislature 'does not, one might say, hide elephants in mouseholes'").  See also Chapman, petitioner, 482 Mass. 293, 305-306 (2019), quoting Commonwealth v. Maloney, 447 Mass. 577, 589 (2006) ("in interpreting statutes that implicate constitutional concerns, we assume that the Legislature intends its statutes to pass constitutional muster, and therefore 'we construe statutes to avoid constitutional problems where possible'").[19]
            3.  Conclusion.  We construe the automatic sealing statute to permit a defendant's access to his own sealed records.  The case is remanded to the single justice for entry of an order vacating the Superior Court judge's order limiting the defendant's appellate counsel's access to the defendant's sealed records.
So ordered.
 
footnotes

 
            [1] We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services, Massachusetts Association of Criminal Defense Lawyers, and Boston Bar Association; and by Greater Boston Legal Services and the University of Massachusetts School of Law Human Rights at Home Clinic. 
            [2] Although Gravito commenced this action by filing a petition in the county court, for convenience, we refer to him as the defendant.
            [3] Transmittal no. 24-4, which sets forth procedures for sealing records under the automatic sealing statute, was issued following our decision in J.F., 491 Mass. 824.  Previously, the statute generally had not been enforced because in Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 509 (1st Cir. 1989), the United States Court of Appeals for the First Circuit determined that the statute was unconstitutional as applied to criminal records ending in a finding of, inter alia, not guilty.  In J.F., we rejected the First Circuit's conclusion and determined that the statute was constitutional and that it evinced the Legislature's intent to abrogate the common-law right of access.  See J.F., supra at 835, 836, quoting Commonwealth v. Pon, 469 Mass. 296, 310 (2014) (concluding that First Amendment to United States Constitution does not preclude sealing records for cases resulting in acquittals because such records "have not been open historically to the press and public" and sealing records "does not 'truly impede'" public scrutiny of government operations); J.F., supra at 837 (automatic sealing statute reflects Legislature's "clear intent to abrogate the common-law presumption of access" to nonconvictions).  See also Commonwealth v. Montanez, 388 Mass. 603, 604 (1983) ("we are not bound by decisions of Federal courts except the decisions of the United States Supreme Court on questions of Federal law").
            [4] The record is unclear whether the defendant received the notice.
            [5] After receiving the defendant's petition pursuant to G. L. c. 211, § 3, seeking review of the motion judge's order that appellate counsel could only view the sought documents, a single justice of this court requested that the motion judge clarify the basis for the order.  In response, the motion judge set forth his reasoning, and expanded appellate counsel's access to include permission to take notes.
            [6] The automatic sealing statute provides, in relevant part:
"In any criminal case wherein the defendant has been found not guilty by the court or jury . . . , the commissioner of probation shall seal said court appearance and disposition recorded in his files and the clerk and the probation officers of the courts in which the proceedings occurred or were initiated shall likewise seal the records of the proceedings in their files.  The provisions of this paragraph shall not apply if the defendant makes a written request to the commissioner not to seal the records of the proceedings."  (Emphases added.)
G. L. c. 276, § 100C, first par.
            [7] A seal is a piece of wax or similar adhesive material affixed to a "folded letter or document . . . in such a way that an opening cannot be effected without breaking it," further supporting the meaning as focused on precluding public access.  Oxford English Dictionary Online, https://www.oed.com/dictionary
/seal_n2?tab=meaning_and_use#23911606 [https://perma.cc/99HR-LJCS].
            [8] "Criminal justice agencies" is defined as 
"those agencies at all levels of government which perform as their principal function, activities relating to (a) crime prevention, including research or the sponsorship of research; (b) the apprehension, prosecution, adjudication, incarceration, or rehabilitation of criminal offenders; or (c) the collection, storage, dissemination or usage of criminal offender record information."
G. L. c. 6, § 167.
            [9] We recently have had occasion to review the legislative history of the automatic sealing statute and its legislative purpose.  See J.F., 491 Mass. at 832-833.  See also Pon, 469 Mass. at 301-302.
            [10] Enacted in 1972, the CORI act "centralized the collection and dissemination of criminal record information in the Commonwealth," creating a "unified management system for all criminal record information" and "allowing . . . the compilation of a comprehensive State criminal history for each offender (CORI report)."  Boston Globe Media Partners, LLC v. Department of Criminal Justice Info. Servs., 484 Mass. 279, 282 (2020) (Boston Globe Media).  See G. L. c. 6, §§ 167–178B; St. 1972, c. 805.  Initially, only criminal justice agencies could access a CORI report.  Boston Globe Media, supra.  The following year, the Legislature enacted the automatic sealing statute, see St. 1973, c. 322, § 1, inserting G. L. c. 276, § 100C, although the sealing of records ending in a finding of not guilty was not automatic until a decade later, see St. 1983, c. 312; J.F., 491 Mass. at 832.
            The CORI act was reformed in 2010, significantly expanding access to CORI reports.  See Boston Globe Media, 484 Mass. at 283, citing Massing, CORI Reform -- Providing Ex-Offenders with Increased Opportunities without Compromising Employer Needs, 55 Boston Bar J. 21, 21 (2011) (discussing statutory history).  See also St. 2010, c. 256.  For example, "prospective employers and landlords may obtain a limited amount of CORI regarding prospective employees or tenants," but not sealed records, including those sealed pursuant to the automatic sealing statute.  Boston Globe Media, supra at 285, citing G. L. c. 6, § 172 (a) (3).  For a fuller discussion of the CORI act, see Boston Globe Media, supra at 282-286.
            [11] "The sealing of criminal records pursuant to [the automatic sealing statute] would not affect the public's ability to attend a criminal trial, or the media's right to report on court proceedings or publish truthful information relating to sealed proceedings."  J.F., 491 Mass. at 835.  See Pon, 469 Mass. at 310 (prior to sealing, "the public had a right of access to any court record before, during, and for a period of time after the criminal trial" [citation omitted]).
            [12] Pertinent here, "criminal offender record information" includes "records and data in any communicable form compiled by a Massachusetts criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge."  G. L. c. 6, § 167.
            By contrast, the CORI act separately defines the term "all available criminal offender record information" to exclude sealed records, including those sealed under the automatic sealing statute.  The term "all available criminal offender record information" means:
"adult and youthful offender convictions, non-convictions, previous and pending hearings conducted pursuant to [G. L. c. 276, § 58A], including requests of such hearings, transfers by the court, disposition of such requests, findings and orders, regardless of the determination, and pending criminal court appearances, but excluding criminal records sealed under [G. L. c. 94C, § 34,] or [G. L. c. 276, §§ 100A to 100C,] or the existence of such records" (emphases added).
G. L. c. 6, § 167.
            [13] To the extent 803 Code Mass. Regs. 2.06(1) (2021), promulgated by the Department of Criminal Justice Information Services, purports to deny individuals seeking their own sealed criminal offender record information access to such information, we owe the regulation no deference in view of the unambiguous statutory language permitting the subject of sealed criminal offender record information access to the same.  See Harmon v. Commissioner of Correction, 487 Mass. 470, 476 (2021).  Compare 803 Code Mass. Regs. 2.06(1) ("An individual requesting a copy of his or her own CORI will have Required 2 Access, which includes all CORI, but excludes juvenile, sealed, or expunged charges" [emphases added]), with G. L. c. 6, §§ 172, 175 (permitting subject access to "all" criminal offender record information).
            [14] Because we do not derive the meaning of statutes from unenacted legislation, we reject the Commonwealth's invitation to rely on pending and failed amendments that would explicitly grant defendants the access requested here.  See Regis College v. Weston, 462 Mass. 280, 288 n.10 (2012).
            [15] The Commonwealth acknowledges in its brief that the right of defendants to access their own sealed records pursuant to the CORI act "does suggest there is no legislative intent to separate defendants from their own records."
            [16] Notably, the plain meaning of "seal" we set forth supra would have been the Legislature's understanding of the term "seal" at the time the automatic sealing statute was enacted.  See Black's Law Dictionary 1517 (rev. 4th ed. 1968) (defining "sealed" as "fastened up in any manner so as to be closed against inspection of the contents"); Black's Law Dictionary 1211 (5th ed. 1979) (defining "sealing of records" as "permit[ting] a person's criminal record to be sealed and thereafter such records cannot be examined except by order of the court or by designated officials").
            [17] Nothing in our decision today alters our determination in Pixley that where a defendant is not the subject of a sealed record from his criminal trial, the defendant is not permitted access to those records.  See Pixley, 453 Mass. at 836-837 (defendant could not access transcripts of in camera hearing held pursuant to Commonwealth v. Martin, 423 Mass. 496 [1996], sealed to protect witness's constitutional right); Commonwealth v. Dwyer, 448 Mass. 122, 146 (2006) (pursuant to protective order, permitting defense counsel, but not defendant, access to privileged psychiatric and counselling records of sexual assault victims "retained in court under seal").
            [18] As the motion judge recognized, precluding appellate counsel's access to sealed records curtails counsel's review of the entire record and thus could hamper counsel's ability to make an informed determination as to the issues to raise on appeal.
            [19] The Commonwealth further acknowledges that its proposed construction would lead to the absurd result of allowing the court and the Commonwealth on appeal, but not the defendant and his appellate counsel, access to records necessary for the appeal and to assembly of the appellate record.  See Commonwealth v. Rainey, 491 Mass. 632, 642-643 (2023) (declining to adopt construction leading to absurd result).
            To the extent transmittal no. 24-4 purported to preclude the defendant and his appellate counsel from accessing the defendant's sealed records, it is invalid.  See Goldstein v. Secretary of the Commonwealth, 484 Mass. 516, 527 (2020), quoting Commonwealth v. Leno, 415 Mass. 835, 841 (1993) ("the principle of separation of powers set forth in art. 30 of the Massachusetts Declaration of Rights prevents the 'judiciary [from] substituting its notions of correct policy for that of a popularly elected Legislature'").